(38 Misc. Rep. 297.)

SEIGEL v. NEARY.

(Supreme Court, Appellate Term. June, 1902.)

1. LANDLORD AND TENANT—EVICTION.
A landlord of a liquor store boarded up a doorway of the store connecting with a side hallway, which the tenant, under the lease, was allowed to use as a means of entrance to the liquor store. Such entrance had been much used by the tenant and his customers. *Held* to constitute an eviction from a substantial part of the premises, so as to suspend the rent until possession was restored to the tenant.

2. SAME—ACTION TO DISPOSSESS—RES JUDICATA.
Where a landlord illegally boarded up a doorway in the store of his tenant, and obtained an order awarding him possession for failure to pay rent due on January 1st, where he thereafter accepts the January rent, the tenant who remains in possession is not barred from setting up the continued actual eviction by the closing of the doorway as a defense to a subsequent attempt to dispossess him for failure to pay the February rent

3. SAME.
Under Code Civ. Proc. § 2253, providing that a warrant of dispossession shall annul the relation of landlord and tenant, a tenant remaining in possession after the issue of such a warrant does not bear to his landlord the relation of tenant from month to month.

Appeal from municipal court, borough of Manhattan, Ninth district.

Action by Anna Seigel against William J. Neary. Judgment for plaintiff, and defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and MacLEAN, JJ.

James A. Donegan, for appellant.

Strasbourger, Weil, Eschwege & Schallek, for respondent.

FREEDMAN, P. J. This is a summary proceeding brought by the landlord against the tenant to recover possession of certain demised premises for nonpayment of rent for the month of February, 1902.

The facts in this case were conceded upon the trial, and are embodied in the opinion of the learned trial judge, from which we quote as follows:

"It is conceded that the only lease existing between the parties hereto is that dated the 7th day of February, 1899, by which the landlord leased the entire liquor store, and cellar and approaches thereto, of the premises situated on the southeast corner of 129th street and Park avenue, in the city of

¶ 1. See Landlord and Tenant, vol. 32, Cent. Dig. §§ 765, 766.

New York, borough of Manhattan, for the term of four years, from the 1st day of March, 1899, at a rental of $780, payable in equal monthly installments of $65.00 on the first day of each month during the term, and that the tenant occupies said premises under said lease and none other, and that under and by virtue of said lease the tenant acquired the right of entry for himself and customers through the hallway through which the tenants of the house over the store entered their apartments from the street. That in said hallway there was an open doorway connecting the tenant's store with said hallway. That the tenant had used the said doorway for the purposes of his business from the time he entered into possession of the premises down to the 12th day of December, 1901, when said doorway was boarded up and closed by the landlord, so that the tenant could not use the same for business purposes, or for any other purpose, and his customers were precluded and prevented from coming into and going from his place of business by that method of ingress and egress, by which his business was considerably interfered with and injured. That by reason of the tenant's refusal to pay the rent for the month of January, 1902, the landlord instituted a summary proceeding in this court to dispossess him because of the nonpayment of said January rent. That the precept was regularly served upon the tenant and proof thereof made, and on the return day thereof, the tenant not appearing, a final order was made in favor of the landlord, awarding to the landlord possession of the premises because of the nonpayment of such rent, and a warrant was thereupon issued to any marshal of the city of New York, in the borough of Manhattan, directing him to put the landlord in possession thereof. That, subsequent to the issuing of said warrant, the tenant, with full knowledge of all the facts hereinbefore stated, paid the landlord the rent for the month of January, for the nonpayment of which said final order was made, and the warrant issued, which rent was accepted by the landlord."

The learned justice then held that the payment of the January rent after knowledge of the eviction was a waiver of the tenant's right to remain in the premises and arbitrarily refuse to pay any rent, but that his right is only to set up any damages that he may have sustained by reason of the eviction complained of, and he therefore granted the final order appealed from. In this, we think, he erred. It seems to have been conceded by the parties that the facts stated, as relative to the closing of the door of the demised premises, constituted an actual eviction of a substantial portion of the same, which, if it had been interposed at the proper time, would defeat any claim for rent. It will be observed that by the terms of the lease the rent was due in advance on the 1st day of each month, so that, necessarily, the petition made for the purpose of dispossessing the tenant for the nonpayment of the January rent, and the subsequent proceedings taken thereunder, had referred to that month only, and could have had no reference to or bearing upon the rent not yet due for the month of February. This fact disposes of the claim that the final order of January was res adjudicata as to the eviction for the reason that the question as to whether or not there was an eviction when the February rent became due was not, and could not have been, litigated or determined by the proceedings taken in January. While it is true that the act of eviction occurred in December, 1901, it continued and existed on February 1, 1902, at the time when that month's rent became due.

A judgment for damages for a nuisance or a trespass will not bar an action for the continuance of the injury, unless the act complained of is permanent in its nature, in which case prospective damages are recoverable, and the first judgment will be a bar (Uline v. Railroad

Co., 101 N. Y. 98, 4 N. E. 536, 54 Am. Rep. 661); and the converse of that proposition is equally true. The fundamental distinction between a constructive eviction and an actual eviction should be borne in mind. When the landlord suffers acts to be done which make it necessary for the tenant to remove, or does or permits any intentional or injurious interference, either by himself or those acting under his authority, which deprives the tenant of the means or the power of beneficial enjoyment of the demised premises, or materially impairs such enjoyment, such acts are considered as tantamount to constructive eviction. Tallman v. Murphy, 120 N. Y. 345, 24 N. E. 716. But, in order to make a constructive eviction available as a defense, there must be an abandonment of the premises. Boreel v. Lawton, 90 N. Y. 293, 43 Am. Rep. 170; Thomson-Houston Electric Co. v. Durant Land Imp. Co., 144 N. Y. 44, 39 N. E. 7. An actual eviction consists in the deprivation, by the landlord, of the tenant from the whole or some portion of the demised premises, and where there has been an actual eviction from a part of the demised premises the tenant may retain possession of what he has; the entire rent being suspended until full possession has been restored. The act of the landlord in depriving the tenant of a portion of the demised premises, being a willful one, and done in defiance of the tenant and his rights under the lease, is in the nature of a trespass. Carter v. Bryon, 49 Hun, 299, 1 N. Y. Supp. 905. The cases are uniform in holding that, under such circumstances, the payment of rent is "suspended until possession is restored." "Where the lessor enters wrongfully into part of the demised premises, the tenant is discharged from the payment of the whole rent, till he be restored to the whole possession." Lewis v. Payn, 4 Wend. 423–427. "A wrongful eviction of the tenant by the landlord from a part of the demised premises suspends the rent until the possession is restored." Christopher v. Austin, 11 N. Y. 216. See, also, Peck v. Hiler, 24 Barb. 178; Johnson v. Oppenheim, 12 Abb. Prac. (N. S.) 449; and Stern v. Brauer, 62 App. Div. 388, 70 N. Y. Supp. 832. The case of Cement Co. v. Radsky, 14 N. Y. St. Rep. 82, is analogous to the case at bar. In that case the defendant leased certain premises from the plaintiff for one year from April 1, 1896. After the expiration of the term, the tenant held over with permission of the landlord. About June 1st in the second year, the plaintiff entered a portion of the leased premises, and erected a derrick, sheds, etc., occupying about one acre of the land. The rent was payable quarterly in advance, and the defendant continued to occupy the remainder of the premises demised until the expiration of the year, and paid two quarters of the rent without objection, after the aforesaid occupation by the landlord. When the action was brought to recover the rent for the third quarter, the tenant alleged an eviction. The jury found in favor of the defendant upon such issues. The court upon appeal held: "The subsequent payment of two quarters' rent does not have the effect of changing the rule; it did not change the obligations of the parties, nor did it create new ones. The dispossession continued, and [after citing cases in which the rule is laid down as before stated herein] the defendant could insist upon it at any time when payment was attempted to be enforced."

The point urged by the appellant herein, that in consequence of the issuance of the warrant of dispossession in January, 1902, the tenant became a tenant from month to month, is not well taken. Section 2253 of the Code of Civil Procedure provides, in terms, that the issuing of a warrant for the removal of the tenant from the demised premises cancels the agreement, however, and annuls the relation of landlord and tenant. It was held, however, in Voorhies v. Cummings, 42 App. Div. 260, 58 N. Y. Supp. 1120, that where a marshal having a warrant for the removal of a tenant, issued in summary proceedings for the nonpayment of an installment of rent due under the lease, forbears to execute the warrant upon receiving the installment from the tenant, the acceptance by the landlord operates as a waiver by him of his right to consider the lease abrogated. The final order must be reversed.

Final order reversed. New trial ordered, with costs to appellant to abide event. All concur.