# SARAH B. MATLACK v. ROWENA KLINE, Appellant, and MARY E. SMITH.

## Division Two, December 4, 1919.

1. **APPELLATE JURISDICTION: Not Revealed by Pleadings: Examination of Record: Mining Royalties.** If the pleadings alone do not reveal the appellate jurisdiction, a review of the record is authorized; and where the suit is a controversy for ten per cent of the ores mined under a certain lease during a period of several years, which by agreed statement is fixed at $790 per month, the pecuniary amount in dispute fixes the appellate jurisdiction in the Supreme Court.

2. **INTERPLEA: Pleadings: Full Statement.** In a proceeding asking the court to compel defendant to interplead for a fund in plaintiff's hands belonging to one or the other of them, the petition should fairly and fully define the nature of the interests of defendants of which plaintiff has full knowledge, and contain all allegations material to an adjudication of the issues.

3. ———: ———: **Plaintiff's Reply: Estoppel: Surplusage.** In a proceeding in the nature of an interpleader, asking that certain defendants be required to interplead for a certain fund in plaintiff's hands and belonging to one or the other of defendants, if defendants by their answers do not deny the statements in the bill a reply thereto has no place in the case; but if they do deny the allegations contained in the bill, plaintiff is required to reply to such answers. But plaintiff in his reply cannot assume a position contradictory to that set up in his petition; for instance, he cannot assume an attitude of hostility to one of the defendants, and allege that such defendant is estopped to claim the stake; but if such allegations in the reply can be treated as surplusage, they should be so regarded, and the suit be not dismissed.

4. ———: **Indivisibility of Action: Judgment for One Defendant: Finality.** In an appeal from a judgment for one of the defendants, by the other alone, in a proceeding in the nature of an interpleader, the matter for consideration is not the contested difference between plaintiff and appellant, but the controversy between appellant and the other defendant as to their respective rights, as between themselves, to the fund in plaintiff's hands alleged by the petition to be payable to one or the other of them. The right of plaintiff to compel defendants to interplead having been established, the subsequent proceeding is a controversy between them for

the fund in their respective answers, which are in the nature of cross-bills, and upon a judgment against either the other is entitled to an appeal.

5. **LEASE: Ratification by Remaindermen.** A lease for a term of twenty years by a life tenant, ratified by the remaindermen, by which he was to be paid ten per cent of the ores mined, terminated upon his death six years after it was made, in so far as his interests were concerned; and a later contract with the lessee, by which in lieu of the ten per cent royalties, he received $1000 cash and $130 was to be paid him monthly during his life and to his wife after his death during the remainder of the lease, did not entitle his wife, after his death, to either the royalties or the monthly payments; but the royalties, if the remaindermen elected to continue the lease for the balance of the term, were payable to them.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby,* Judge.

REVERSED AND REMANDED.

*George Hubbert, W. Cloud* and *Thos. Carlin* for appellant.

(1) The will of David Caldwell must control the estate and resulting rights in question; and by its terms the same are vested in appellant Kline, dating from the deaths of her associate devisees without living issue, including Frederick D. Smith. (2) Courts are enjoined generally to have a care for the provisions of the wills of testators and truly execute the same; and there is no discretion to evade the force thereof, nor liberty to rove in the fields of suggestion of better ways than the testator has pointed out. R. S. 1909, secs. 583, 2569; Sparks v. Clay, 185 Mo. 408; Barnard v. Keathley, 230 Mo. 225; Stewart v. Jones, 219 Mo. 637; Stockwell v. Stockwell, 262 Mo. 685. (3) Whether appellant be regarded as vested of the Smith portion of the Caldwell estate by direct primary devise, or by force of the provision for it to be passed on to her at Smith's death, she stands seized of the whole estate for herself and her heirs, under the fundamental rule as to the unity of

the particular estate and the remainder. Although they
may be different parts of the entirety, the one in pos-
session and the other in expectancy, they are, neverthe-
less and in fact one estate, and the particular life ten-
ant stands for the entirety. 16 Cyc. 648; 2 Blacks. Com.
164; 4 Kent Com. 198. (4) Appellant was entitled to
possession immediately upon the death of Smith as the
preceding tenant, and to all rents and profits accruing
subsequent to his death. 16 Cyc. 652. (5) At the
death of Smith as life tenant, the estate for twenty
years, as created by his lease for a term not expired
by more than eleven years, was of necessity terminated,
but subject, at the option of the remainderman, to
adoption of the leasehold, term as to rents and royalties
and the right to exact compliance therewith on the part
of the remainderman. Hinton v. Bogart, 137 N. Y. Supp.
697; Guthmann v. Vallery, 71 N. W. (Neb.) 734, 66
Am. St. 475; Hoagland v. Crum, 113 Ill. 365; Mulli-
gan v. Cox, 56 N. Y. Supp. 797; Edghill v. Mankey, 11
L. R. A! (N. S.) 688 and note; Ray v. Young, 142 N.
W! (Ia.) 393. (6) A contract for a lease and a lease
itself are far from identical. They are not to be con-
founded. They are different. 1 Tif. Landl. & Ten., p.
371, sec. 62. The written lease in this case does not
purport to be the grant or deed of the appellant Kline.
If so, the rents and royalties reserved would be to her,
for they could not have been reserved on her lease
arbitrarily to another, but must have been reserved to
the lessor as such, at least unless it were otherwise by
her agreement for good consideration thereto moving
her. Tif. Landl. & Ten., pp. 1026-8.

*White, Hackney & Lyons* for respondent Sara B.
Matlack.

(1) Fred D. Smith having but a life estate in the
land in question, upon which no mining had previously
been done, had not, by virtue of his life estate, any
interest in the undeveloped minerals in the land, and
was, therefore, incapable, by his own lease, of vesting,

in the lessee the right to mine on the premises; and the defendant, Rowena Kline, as owner of the reversion or remainder, had no right, during the lifetime of Fred D. Smith, to lease the land for mining purposes. But, Fred D. Smith and Rowena Kline did have the power and authority to lease the property for mining purposes on such terms as they saw fit. Hill v. Ground, 114 Mo. App. 80. (2) By her instrument in writing, ratifying in full the mining lease made by Fred D. Smith, the defendant, Rowena Kline, ratified, confirmed and became bound by all the terms and conditions of the Smith lease, including the provision by which all the royalty was payable to Smith or his heirs. Town of Ansonia v. Cooper, 64 Conn. 536; Same Case, 66 Conn. 184. (3) Even though the written instrument executed by the defendant Kline, ratifying Smith's lease be deemed ineffectual as a lease from her by reason of the lack of operative words of lease, yet it operated, as against the defendant Kline, as a written license to enter and per- form all the terms and conditions of the lease. 25 Cyc. 642; Boone v. Stover, 66 Mo. 430. And the plaintiff, as such licensee, having entered and expended large sums of money in mining and developing the land, by virtue of the license, has become a purchaser for a valuable consideration and the license, being thus an agreement on a valuable consideration, is irrevocable by the licensor. Railroad v. Railroad, 222 Mo. 484; Baker v. Railroad, 57 Mo. 273. Likewise the plaintiff on the faith of the validity of the lease, and the binding force of the license, having entered into the contract with Smith for the liquidation of the 10 per-cent royalty, and having paid him the $1000 cash and the monthly payments of $130 per month thereafter, should, on the same principle, be protected in her property rights thus acquired. (4) By virtue of her ratification in writing of the Smith lease the defendant Kline separated the accruing royalty from the reversion and made the same, by the express terms of the contract, payable to Smith or his heirs for the unexpired term of the lease, and while she could

have withheld her consent to the execution of the lease and thereby thwarted the mining operations entirely, the defendant, Rowena Kline, had perfect power and authority to make all the royalty, or any part thereof, for the full term of the lease or any part thereof, payable to some person other than herself, and thereby estop herself from afterwards claiming any part of the royalty. Vantage Mining Co. v. Baker, 170 Mo. App. 457; Higgins v. California P. & A. Co., 109 Cal. 304; 1 Underhill L. & T. p. 532. (5) The defendant, Kline, having conferred full and complete dominion over, and ownership in, the accruing royalties on Fred D. Smith, by her ratification in writing of his lease, and having thus separated the accruing royalties from the reversion, the contract between Smith and the plaintiff liquidating the accruing royalties was valid and binding and conferred upon the plaintiff a property right in, and ownership of, the 10 per cent. royalty thereafter to accrue, so long as the plaintiff made the monthly payments therein provided for.

*Jas. T. Neville, Norman A. Cox* and *Hugh Dabbs* for respondent Mary E. Smith.

(1) Smith, as life tenant, with a contingent interest in the remainder, could not make a lease on the land for mining purposes without the consent of the life tenant. All the parties desiring that the land should be prospected and developed for mining purposes, in order to increase its value and consequently their interest therein, entered into the contract for lease described in the record, for the mutual benefit of all the parties thereto. This contract and lease were legal under all the authorities. In re Agnews Estate, 17 Pa. S. Ct. 201; Tarr v. City Council, 46 S. C. 15, 23 S. C. 984; Defferbaugh v. Hess, 36 L. R. A. (N. S.) 1106; Lenfers v. Henkle, 73 Ill. 405. (2) Appellants not only ratified, signed and agreed to the execution of the lease, but the lessees and their assigns have gone into possession under this ratification, in accordance with the

provisions of the lease, and the intentions of the parties appellant and respondent and those under whom they claim, have developed the land for mining purposes, spent large sums of money thereon, made improvements exceeding $75,000 in the way or mining plants, and increased the value of the land from $40 an acre to about $300 an acre. Under this state of facts they will not be heard to say that the lease is invalid and that Mrs. Smith is not entitled to the royalty under the terms thereof. (3) The court will take judicial notice of the fact that in this district the ore supply will last for more than fifty years after development is started. This fact bears largely on the question of consideration, which is the principal point urged by appellant, and shows that after the expiration of the present lease the remainder-man will have the opportunity to produce ore therefrom for many years, taking for that purpose a fully developed and proven property, whereas, before the execution of these contracts, the land had simply an agricultural value which was nothing like the present and future value for mining purposes. Rowena Kline has ratified not only the contract for lease between Smith and Bowen, but has ratified and acknowledged the lease as well. There is nothing in the argument of appellant that the act of Rowena Kline and those under whom she claims is not of sufficient solemnity to take effect as a lease. It is a well known principle of law, that a ratification of the contract for lease and of the lease itself by Rowena Kline, when based on a consideration, is an adoption by her of these instruments as her own, and having induced the expenditure of large sums of money in improving and developing this property by such ratification, appellant is now, under the law, denied the privilege of backing up on her bargain. As to the consideration paid to appellant and those under whom she claims for the execution of these contracts of adoption, or for this lease, as the law now makes it, when appellant, who was of legal age and capacity to make a contract, named the consideration therein for foregoing

certain of her rights, the benefit accruing to the land by reason of the opening up and developing of mines thereon, and this consideration was paid by the other contracting party by the investment of thousands of dollars in the opening up and developing of mines thereon, appellant's right to question the adequacy of the consideration named by her is gone. Appellant is now the owner of the remainder in this property. Just prior to Fred Smith's death, there were but two persons who could succeed to this remainder—appellant and Fred Smith, himself, or rather the issue of Fred Smith. Two contingencies stood in the way of appellant: (1) the contingency that she would outlive Fred Smith; (2) that Fred Smith would die before she did, and leave no issue. The only contingency in the way of Fred Smith was that he had to outlive appellant, as the remainder was based on his life estate. Fred Smith was in vigorous health with a possibility of life at least equal to that of appellant, and the possibility of his leaving issue was not extinct, so that the contingent interest of Rowena Kline was remote. However, both Smith and Kline had a contingent interest about which they could contract. This they did—both with Bowen. Smith gave Bowen a lease, and charged him a certain royalty as a consideration therefor. Rowena Kline sold Bowen an estate, out of her contingent interest, which would end in 1927. She effected this sale by adopting by ratification the Smith-Bowen lease, but she named her own consideration. As the possibility of her succeeding (at the time of the contracts) to any interest in this property was very remote, she drove a hard bargain, and induced Bowen and his successors to expend seventy-five thousand dollars toward the opening up and developing of this property as a mining proposition and increasing the value of the fee from about forty dollars per acre to about ten times that much. Taking into consideration that her chances of ever succeeding to the property were remote, for this consideration she waived

any present monetary return therefrom until the year 1927 and thereby laid up treasures for the future. She made what was a safe investment for the reason that if no ore were discovered under the lease, the lease became forfeit and she stood toward this property just where she did before, while if ore were discovered, and the remote possibility of her succession was changed into a positive fact of present possession by the happening of the contingencies, by her simple contract, she had enhanced the value of the principle of her inheritance by the year 1927, by at least ten fold.

WALKER, C. J.—This action, so far as its facts will admit of its classification, is in the nature of a bill of interpleader, in that the plaintiff (respondent here) seeks to have the defendants interplead, that it may be determined to whom plaintiff shall be required to pay rent or royalty on a tract of mining land, leased by the latter. A decree therein was rendered below, in favor of one of the defendants, Mary E. Smith. From this judgment the other defendant, Rowena Kline, appealed to the Springfield Court of Appeals, which reversed the judgment of the trial court, and directed that payment of the rent or royalty be made by the plaintiff to Rowena Kline. FARRINGTON, J., dissented on the question of jurisdiction, and the case was transferred to this court (Matlack v. Kline, 190 S. W. 408).

The petition alleges that the plaintiff is the owner by assignment of a mining lease on certain land in Lawrence County, describing it; that this lease was executed **Pleadings: Petition.** by Fred D. Smith and Mary E., his wife, to one A. B. Bowen, and was ratified by certain persons (naming them), among others, the defendant Rowena Kline. That said lease was for a term ending January 31, 1927, and under its conditions, the lessee or his assigns, was required to pay Fred D. Smith, or his heirs, ten per cent. of the gross value of all minerals removed from said land by the lessee or his assigns during the lease; that said A. B. Bowen has as-

signed and transferred all of his right, title and interest in said lease to plaintiff, and that she is now the legal owner and holder of same; that she has since exercised all of the rights of ownership to said land under said lease; and that the defendant Rowena Kline ratified said lease so made by Fred D. Smith to A. B. Bowen.

Plaintiff further states that on the 7th day of September, 1910, Fred D. Smith and Mary E., his wife, by their written contract with plaintiff, agreed, in lieu of the ten per cent. royalty provided for in the lease to A. B. Bowen, that plaintiff would pay Fred D. Smith $1000 in cash, and a monthly rental of $130 during the term of said lease; that in consideration of said cash payment then made, and the agreement as to the monthly payments to be made by plaintiff, Fred D. and Mary E. Smith conveyed and assigned to plaintiff their claim for a royalty on a ten per cent. basis; that the payment of the substituted or monthly rental was to commence November 3, 1910, and be made on the third day of each month thereafter during the term, so long as plaintiff or her successors or assigns should hold and enjoy the benefits of said lease. This contract further provided, in the event of the death of Fred D. Smith during the lease, that the monthly payments should, for the remainder of the term, be paid to Mary E. Smith. That since the death of Fred D. Smith, who died June 20, 1915, the defendant Rowena Kline claims that she is the owner of said real estate, subject to said mining lease held and owned by plaintiff; that said Rowena Kline, under her alleged ownership, is claiming and demanding from plaintiff the payment of a royalty of ten per cent. on all minerals taken from said land in lieu of the monthly payments subsequently agreed to be made by plaintiff to Fred D. Smith and wife; that upon the death of Fred D. Smith, the said Mary E., his wife, claims that the plaintiff is required to pay her the monthly payments; that these conflicting claims are being made of plaintiff by said Rowena Kline and Mary E. Smith, respectively,

and unless determined, will vex and annoy plaintiff in the enjoyment of said lease.

That plaintiff is ready and willing to pay the rental or royalty on said property either on a royalty or monthly payment basis, as the court may direct, and to whomsoever may be found to be entitled to same.

Plaintiff also states that there is now on said land a large quantity of tailings or chats to which she claims title, and that defendants are denying her title to same, and are harassing and annoying her in the sale and management of same. She, therefore, asks affirmative relief in that she may be authorized to sell and dispose of said material now on hand and that may subsequently be produced during said lease. That she has no adequate remedy at law.

She therefore prays that the court determine the validity of her contract with said Fred D. and Mary E. Smith, and adjudge who is entitled to receive said monthly payments of $130 during the remainder of the term of said lease, and, if the court determine that said contract is invalid and, since the death of Fred D. Smith. the royalty of ten per cent. should be paid on all mineral obtained by plaintiff from said land, that the court adjudge and determine to whom the same shall be paid.

Plaintiff further alleges her willingness to comply with the court's judgment, and that defendants be restrained and enjoined from interfering with plaintiff's mining operations on said land under said lease, and for such other, further orders, etc.

The defendant Mary E. Smith, so far as her answer is relevant to the matter at issue, alleges in substance, as stated in the petition, the execution of the mining lease by Fred D. Smith to A. B. Bowen, the ratification of same by several persons, among others, the defendant Rowena Kline; the assignment of said lease by Bowen to plaintiff; the subsequent contract of September 7, 1910, between plaintiff and Fred D. and Mary E. Smith, set forth as in plaintiff's petition; the death of Fred D.

**Answer of Mary E. Smith.**

Smith, and that he bequeathed the royalty provided for in said contract to the defendant, Mary E. Smith. She then asks that if the latter contract between her husband and herself on the one part, and plaintiff on the other, be declared invalid, that she, and not Rowena Kline, is entitled to the royalty on a ten per cent. basis on all minerals taken by plaintiff from said land. She also claims that she is entitled to the chats and tailings described in plaintiff's petition.

She therefore prays that the contract for the lease, the consent and ratification thereof, and the mining lease made thereunder, be declared to be valid and binding and that same created a binding mining lease of said land; and that Fred D. Smith and his assigns were the owners of same for the full term and that, since the death of Fred D. Smith, the defendant, Mary E. Smith, is the owner and entitled to said royalty or the monthly rental of $1.30 under the contract of assignment, and to the chats and tailings described; and for other and proper relief.

The answer of the other defendant, Rowena Kline, states her sole ownership in fee of the land in question, and the devolution of her title thereto by descent from her ancestor, David Caldwell; that Fred D. Smith was a life tenant of said land under the will of said Caldwell, with the provision that, upon Smith's death without issue, the land was to descend in fee to other devisees named in the will. That all of those so named predeceased Smith, except Rowena Kline, this defendant. That Smith died June 20, 1915, without issue, and that the land thereupon descended to this defendant in fee, and she has since been invested with same. That the defendant Mary E. Smith makes some claim to said land, and the rents and royalties therefrom, as defendant is informed, by reason of an alleged contract in relation thereto, with the life tenant, Fred D. Smith. That plaintiff, who was allowed by Fred D. Smith to mine lead and zinc ores upon said premises during the lifetime of the latter, has continued

*Answer of Rowena Kline.*

and is continuing to remove minerals therefrom under said adverse claim of right, and for more than ten days before this action was brought has appropriated and continues to appropriate and convert to her own use, mineral in large quantities from said land; mining up to the date of the commencement of this action, two hundred tons of ore, of the value of twenty thousand dollars, and has refused to pay this defendant the royalty thereon as stipulated in the lease. This lease, as made between Fred D. Smith and A. B. Bowen, is then described as in plaintiff's petition. It is further alleged that Bowen and plantiff entered on said land under said lease and mined same during the lifetime of Smith, and that plaintiff, since the death of Smith, has continued mining thereon. removing from the land minerals amounting in value to $20,000, to this defendant's damage in the sum of $2000, and has paid part of same to the defendant Mary F. Smith. who claims some interest in said premises under her deceased husband, Fred D. Smith.

Defendant prays that the court adjudge and determine the rights. interests and demands of the parties hereto, and that an inquiry and accounting be adjudged to this defendant, and for damages to the date of this action. in the sum of two thousand dollars, and for such other and additional damages as may accrue to this defendant from plaintiff's operations in mining said land.

This is followed with a description of the land by government sub-divisions, as in plaintiff's petition.

There is also incorporated in this defendant's answer a copy of the will of said David Caldwell, setting forth the devise of his realty as before pleaded. The various contracts in regard to the leasing of this land, as pleaded in the petition, are then set forth in haec verba. Defendant further alleges that plaintiff claims to have acquired all of the right. title and interest of A. B. Bowen (the original lessee) in said land; and has taken possession of the premises and has attorned. and paid rent to Fred D. Smith as her landlord until his death, June 20, 1915, under the provisions of the lease;

that plaintiff is taking out large quanties of mineral from said land and is selling and disposing of same and distributing the proceeds, none of which are paid to this defendant. That Fred D. Smith died June 20, 1915, without issue, leaving as sole devisee under the will of said David Caldwell, this defendant, Rowena Kline; that upon the death of Fred D. Smith, all of the rights and interests of the defendant, Mary E. Smith, in said premises, terminated.

The removal of mineral from said land and the value of same as to gross amount and that of this defendant's royalty is again pleaded; and that plaintiff continues to so remove and dispose of said mineral to defendant's damage, and refuses to account to this defendant for the royalty due as prescribed in the lease.

The defendant thereupon prays that the court adjudge and determine the interests, estates and liens of the parties hereto, and that this defendant be adjudged damages in the sum of $2000 to the date of this action, and for such further sum as shall accrue from the continuance of the mining of said land and the removal and sale of the mineral therefrom, and for other and further relief.

The plaintiff, thereupon, filed a reply to the defendant Rowena Kline's answer. After a general denial it is in these words: "Plaintiff further replying to **Reply.** said answer of defendant Rowena Kline, states that the plaintiff relying upon the validity of the mining lease bearing the date of January 31, 1907, executed by Fred D. Smith and Mary E. Smith, as lessors, and joined in and ratified and confirmed by defendant Rowena Kline, Charles B. Caldwell, N. A. Caldwell, made to A. B. Bowen, his heirs and assigns, running for a period ending January 31, 1927, was induced to and did purchase all of the rights and privileges granted by said mining lease to the said A. B. Bowen, lessee, and was induced to and did pay out large sums of money therefor, believing that the same was binding upon said Fred D. Smith, Mary E. Smith, and upon

defendant Rowena Kline, Charles B. Caldwell and N. A. Caldwell; and believing said lease to be valid and binding in all of its terms and for a period therein designated, and having no notice or knowledge of any adverse claim, plaintiff expended large sums of money developing said mining lands, erecting machinery thereon for the cleaning and dressing of ores, sinking shafts, at a cost to plaintiff of at least $35,000; and plaintiff relying upon the validity of said mining lease sub-let portions of said real estate to tenants for mining operations and said tenants expended large sums of money in developing the property covered by said mining lease in drilling and sinking shafts and opening up mines and erecting machinery thereon for the cleaning of ores, at a cost of at least $25,000; and during all of said times said defendant knew that the plaintiff was expending large sums of money in the development of the mines on said real estate and knew of the mining operations thereon by the sub-tenants and of the large expenditures of money by the plaintiff and said sub-tenants, and the said defendant made no objections thereto, but on the contrary acquiesced in and encouraged the plaintiff and her sub-tenants to make said expenditures; and that the said defendant knew that the plaintiff at and before the time plaintiff purchased said mining lease from A. B. Bowen was contemplating the purchase and was about to purchase the same, and made no objections thereto, but on the contrary induced and encouraged the plaintiff to purchase the same; and the plaintiff alleges that the said defendant, Rowena Kline, is now estopped and debarred from claiming that said mining lease is not binding upon her for the full period named in said lease."

The ratification of the lease from Fred D. Smith to A. B. Bowen by a number of possible remaindermen, none of whom now survive, except Rowena Kline, is as **Consent to Lease.** follows: "For and in consideration of the sum of one dollar and other valuable considerations, the receipt of which we hereby acknowl-

edge, we hereby consent to and ratify in full the fore-
going mining lease.'' This writing was made three
years after the execution of the lease from Smith to
Bowen, and the day before the making of the contract
between plaintiff and Fred D. and Mary E. Smith.

The foregoing pleadings, where limited to a state-
ment of the facts, sufficiently present the matter at issue,
except that the petition does not fairly and fully define
the nature of the interests of the defendants, of which
plaintiff had full knowledge, and which are
material allegations in a proceeding of this
character. [Robards v. Clayton, 49 Mo. App. 608; U.
Ry. v. O'Connor, 153 Mo. App. 1. c. 143; Conley v. Ala.
Gold Life Ins. Co., 67 Ala. 472; Augusta Bank v. Com-
press Co., 99 Ga. 286.] Further than this, the plaintiff's
reply, except the general denial therein, has no place in
this proceeding. Of this, more at length later.

**The Facts.**

A recapitulation of the relevant facts as they appear
in the pleadings and the record may, however, aid in a
clearer understanding of the case. They are as follows:
A mining lease to the land in question was executed by
Fred D. Smith, a life tenant, January 31, 1907, to A. B.
Bowen, for a term of twenty years, conditioned upon the
payment by the latter to Smith or his heirs of ten per
cent. of the value of ores mined on said land. The will
which devised a life estate to Smith provided, if he
died without issue, that the land should be divided equal-
ly among the testator's surviving heirs. The defendant,
Rowena Kline, was the sole survivor when this suit
was brought.

On the 16th day of January, 1909, Bowen assigned
the lease to plaintiff. On the 6th day of September,
1910, the then possible remaindermen, including Rowena
Kline, ratified, in the terms heretofore stated, the lease
made by Smith to Bowen.

On the 7th day of September, 1910, the plaintiff,
Fred D. Smith, the life tenant, and his wife, Mary E.
Smith, one of the defendants here, entered into an
agreement in regard to said land which, viewed from one

vantage, is a lease, but from its subsequent terms simulates a warranty deed. This instrument, after recognizing and reciting the salient features of the lease from Smith to Bowen, provided that instead of the royalty on a ten per cent. basis to be paid by plaintiff for mining said land, that she would, after the payment of $1000 in cash, thereafter pay Smith a rental of $130 per month during the remainder of the term of the original lease, which terminates January 31, 1927. In the event of Smith's death before said date, this rental was to be paid to his wife, Mary E. Smith, during the remainder of the term. Other conditions as to forfeiture, etc., are contained therein, not pertinent to the matters at issue. The remaindermen were not parties to the agreement or lease from Smith and wife to plaintiff. The latter has been mining the land since the assignment of the lease to her by Bowen, and has been paying the royalty and rental on same as provided. In June, 1915, Fred D. Smith died. Conflicting claims have been made by defendants for the royalty or rent. The defendant Mary E. Smith claims that she was entitled to the stipulated monthly rent, or if it be declared "invalid" since the death of Fred D. Smith, that it be decreed that she be paid a royalty by plaintiff of 10 per cent. on the ores mined. This she claims by reason of her joinder as a party to the lease between plaintiff and her husband and a bequest to her by the latter of said royalty.

The defendant Rowena Kline, conceding the validity and binding force of the lease, which she ratified, from Fred D. Smith to A. B. Bowen and assigned to plaintiff, claims, as the owner in fee of the land in question, that she is entitled, since Smith's death, to the royalty on all ores mined during the remainder of the term. Thus beset by contesting claimants, the plaintiff has sought refuge in the courts, that her duty may be defined.

I. An examination of the pleadings alone does not suffice to enable the pecuniary jurisdiction to be satis-

factorily determined. Under such circumstances a review of the record is authorized. [Cable v. Duke, 208 Mo. 557; Pittsburg Bridge Co. v. St. L. Tr. Co., 205 Mo. 176; Vanderberg v. Gas Co., 199 Mo. 455, 97 S. W. 908; Kitchell v. Manchester Rd. Elec. Ry. Co., 146 Mo. 455, 48 S. W. 448.] An agreed statement of the facts fixes the royalty at something more than $790 per month, estimated on a 10 per cent. basis. If, therefore, it be determined that the contract fixing the royalty at this rate is the valid and subsisting one, and a judgment is rendered in favor of either claimant for the amount of the royalty during the time that has elapsed since the death of the life tenant, it will far exceed the minimum amount necessary to bring the case within the jurisdiction of this court. Under our view of the law applicable hereto, as will be subsequently developed, the case is subject to a final review here.

*Jurisdiction.*

II. It is contended, with some degree of plausibility, that the only matter submitted for our consideration is the contested difference between the plaintiff and the defendant Rowena Kline; that the defendant Mary E. Smith, having recovered a judgment in the trial court with which she is content, as is the plaintiff who does not appeal, such judgment is a finality and cannot be reviewed in this proceeding because the defendant Rowena Kline alone appeals. · This conclusion is due to a misconception of the nature of the action. While it lacks some of the essentials of a bill of interpleader, in that plaintiff does not appear to be a wholly disinterested stakeholder, and the defendants do not claim identical amounts, although arising from the same fund, enough appears from the pleadings to authorize the classification of the action as a bill in the nature of a bill of interpleader, in which the plaintiff seeks some affirmative relief other than the mere right to compel the defendants to interplead, as in a case of interpleader proper. As further characterizing the nature of the proceeding, the defendants filed answers which may not inaptly be termed cross bills, in

*Indivisibility of Action.*

order that they might bring their respective equities before the court. Incidentally, it may be remarked in this connection, that wherever these pleadings are defective and would, as a consequence, have been subject to demurrer, the parties having answered and proceeded to a hearing without formal objections, and enough appearing to show that a cause of action is stated, although inartificially and burdened with surplusage, objections which would otherwise have been held to be tenable are waived, and a disposition of the case upon the issues made is authorized. [Hollister v. Lefevre, 35 Conn. 456; Heath v. Hurless, 73 Ill. 323; Bedell v. Hoffman, 2 Paige, (N. Y.) 199; 23 Cyc., p. 33; Natl. Union v. Keefe, 172 Ill. App. 101; 14 Stand. Encyc. Proc. p. 233 & notes.]

Where, as here, the action is in the nature of a bill of interpleader, the purpose of same, as in the more strict proceeding, is that the defendants may be brought into court, that it may be determined to whom the amount admitted by plaintiff to be due should be paid. This having been done, by the issuance and service of process, upon the answers of the defendants having been filed, the controversy, except to settle the affirmative prayer of the plaintiff, becomes one between the defendants, the plaintiff's presence being retained therein simply to finally determine the issue as to his right to the separate relief claimed, and to subject him to such orders as may be found necessary in the protection of defendant's rights. Upon the contest becoming one between the defendants, the judgment in favor of either below is against the other, and the right to an appeal of such other for the final determination of the correctness of said judgment, follows as a necessary consequence.

Apropos of this conclusion is the ruling of this court in Roselle v. Farmers' Bank, 119 Mo. l. c. 92, in which it is said, in substance, that an interpleading suit, or one in the nature of same, involves two successive litigations; one between the plaintiff and the defendants as to whether the latter shall be required to in-

terplead; and upon this having been determined affirmatively, the other is between the defendants. The subjects of these litigations are distinct, requiring separate allegations and proofs. To a like effect is the ruling of the Kansas City Court of Appeals in Glasner v. Weisberg, 43 Mo. App. 1. c. 220, in which the court says, in effect, in defining the procedure, that if the defendants do not deny the statement in the bill, the ordinary decree is that they be required to interplead; then the plaintiff's active participation in the suit ceases; but if defendants deny the allegations of the bill, the plaintiff is required to reply to the answers and close the proof in the usual manner. At the hearing the plaintiff can only insist that defendants interplead (Story, Eq. Pl. sec. 297), and they alone contest their conflicting claims. The course thus required to be pursued, which is definitive of the dual nature of the action, after the recognition by the court of the right of interpleader, is also affirmatively announced in State ex rel. Mulvihill v. Kumpff, 62 Mo. App. 1. c. 335, in which, after recognizing the ruling authority of Roselle v. Bank and citing with approval the ruling announced in Glasner v. Weisberg, the court says, at page 336:

"If the court should enter a decree dismissing the plaintiff's bill of interpleader, from that he could appeal, but with the decree determining the rights of the defendant interpleaders to the fund he would have no concern and could not be heard to call it in question by motion for a rehearing. After the withdrawal of the plaintiff from the case, the controversy is then solely and exclusively carried on between the several interpleaders, who claim the fund. And, whether the parties who claim the fund are defendants to a bill of interpleader, or are brought in under a rule according to the prayer contained in an answer (in the nature of a bill of interpleader), or are permitted on their own motion to interplead, can make no difference. The contest is between them, and them alone.

"When the finding and decree determining the rights of the various contestants are entered, that puts an end to the whole controversy; unless, as provided in our practice act, one of the contestants, who is dissatisfied therewith, moves for a new trial of the issues which have been so determined adversely to him. The claimants of the fund, whether they be plaintiffs, defendants or interpleaders, who have come in on their own motion, are parties to the decree."

See also Comm. Trust. Co. v. Du Montimer, 183 S. W. (Mo. App.) 1139, as to right of review of the entire case upon appeal of one of the parties.

Guided by the rule thus announced, concerning the correctness of which there is no contrariety of opinion here or elsewhere, we are authorized in concluding that the defendants having been required to interplead, the subsequent proceedings were between them alone, so far as concerns the determination of their respective rights: and upon a judgment being rendered in favor of either, the other is entitled to an appeal. The recognition of a different doctrine would defeat the purpose of an interpleader and instead of affording a method by which the rights of all of the parties could be disposed of in one action, would split it into piecemeal, and but continue plaintiff's double vexation in regard to one liability. [Funk v. Avery, 84 Mo. App. 490; Sullivan v. Knights, 73 Mo. App. 44; Conn. Mut. Life v. Tucker, 23 R. I. 1, 49 Atl. 26, 91 Am. St. 590 & notes: Monks v. Miller, 13 Mo. App. 363; Ireland v. Kelly, 60 N. J. Eq. 308, 47 Atl. 51.] The contention, therefore, as to the divisibility of the action, and the finality of the judgment of Mary E. Smith, is without foundation.

III. We come now to a consideration of the claims of the defendants. Mary E. Smith, the widow of the life tenant, claims the stipulated monthly rental on the land, **Defendants' Claims.** under the contract made with the plaintiff by her and her husband on September 7, 1910. This claim is made alternatively in

her answer, in which she asks, if the contract in regard to same be held invalid, by which we understand the pleader to mean non-existent, since the death of the life tenant, Fred D. Smith, that defendant be adjudged to be entitled to the ten per cent. royalty on the gross value of the minerals taken from the land during the term of the lease. Whether this contract of September 7, 1910, be construed to be a new lease or a substitution of the original between Fred D. Smith and A. B. Bowen, not having been ratified by the remaindermen, was determined by the death of Fred D. Smith, the life tenant. Without this ratification he could not burden the body of the estate or affect the rights of the owner of the fee by an agreement or attempted transfer which was to continue beyond the limits of his tenure (Coulson v. LaPlant, 196 S. W. 1144). The life tenant being thus restricted, neither the joinder of this defendant as a party to the lease, to which we will hereafter refer more at length nor the attempted bequest to her of the monthly rent by the life tenant adds anything to the force of her claim, which must derive any merit it may possess from some right or power of the life tenant. [Foote v. Sanders, 72 Mo. 616; Mo. Cent. etc. Assn. v. Eveler, 237 Mo. 679; Edghill v. Mankey, 112 N. W. (Neb.) 570; Guthmann v. Vallery, 51 Neb. 824, 66 A. S. R. 475; Hinton v. Bogart, 137 N. Y. Supp. 697; King v. Foscue, 91 N. C. 116; Wright v. Graves, 80 Ala. 416; Johnson v. Grantham, 104 Ga. 558; McIntyre v. Clark, 26 N. Y. Supp. 744.]

The unquestioned limitation of the estate of the life tenant does not preclude him from making a lease for any number of years, as it will be held valid only during his life, terminate at his death, and have no effect upon the estate of the remaindermen. [Preston v. Smith, 26 Fed. 884, affirming 23 Fed. 737; Coakley v. Chamberlain, 8 Abb. Pr. (N. S.) 37; Bergengren v. Aldrich, 139 Mass. 259; Miles v. Miles, 32 N. H. 147, 64 Am. Dec. 362; 16 Cyc. p. 640.]

We have stated that the joinder of this defendant in the lease added nothing to her claim to the rent after the death of the life tenant. No consideration, actual or constructive, accompanied or arose out of her act; and she had no interest in the property, and could convey none, as in a case of inchoate dower or other interest of the wife which cannot be aliened or assigned unless she joins in the conveyance with her husband. [Vantage Mining Co. v. Baker, 170 Mo. App. 457; Lenfers v. Henke, 73 Ill. 405, 24 A. R. 263.]

It is somewhat dubiously contended that the ratification by the remaindermen of the making of the lease from Fred D. Smith to Bowen, and by the latter assigned to plaintiff, in some manner enlarges the claim of defendant, Mary E. Smith. She claims primarily that her right to the rent arises out of the contract or lease made by herself and her husband to the plaintiff. When this ratification was made the lease under which she now claims rent was not in existence. That the ratification was only intended to apply to the instrument on which it was indorsed is evident from its terms, to-wit: "We hereby consent to and ratify the foregoing lease." Adducing reasons in the face of this record to sustain a conclusion that these words mean other than that they were to apply only to the lease on which they were indorsed confuses rather than clarifies the issue. What is plain cannot be made more plain, however it may be decorated with words.

If it be claimed that the assignment of the original lease carried the ratification indorsed thereon with it, the contention can apply only in so far as said lease is in terms identical with that subsequently made between plaintiff, the life tenant and this defendant. Other than in the description of the land and the duration of the terms, there is no identity between these two instruments. Not only are the parties different, in that this defendant is not named in the original as one of the lessors, although so named in the subsequent lease; but the amount of the rent and the manner of its payments

are not the same in both leases. To neither of the changes noted, therefore, can the remaindermen be said to have assented. This being true, Rowena Kline, their sole survivor, is not bound thereby, and the operative force of the lease between plaintiff, the life tenant and this defendant, so far as it may be claimed to affect Rowena Kline's interest ceased with the death of the life tenant.

Upon being invested with the fee, Rowena Kline became entitled to the rent or royalty, which follows the ownership of the land. [Stevenson v. Hancock, 72 Mo. l. c. 615; Deffenbaugh v. Hess, 225 Pa. St. 638, 36 L. R. A. (N. S.) 1099; McFadden's Est., 224 Pa. St. 443; Hinton v. Bogart, 137 N. Y. Supp. 697.]

Whether, after her investiture, she continued bound by the terms of the lease, it is not necessary to discuss or determine, because she is satisfied with its terms and consents to its continuance. This is in harmony with the plaintiff's mental attitude which, although alternatively pleaded in her petition, concedes the continuance of the lease, the defendant's consent and approval of same, and asks that it may be adjudged to whom the rent or royalty thus admitted to be due shall be paid. [Winfrey v. Work, 75 Mo. l. c. 56; Min. Co. v. Baker, 170 Mo. App. 457; Higgins v. Calif. Pet. Co., 41 Pac. 1087.]

Under this state of facts, although it be held, as it has been in several jurisdictions, that the lease terminated upon the death of the lessor, if the remainderman, as is the case here, acquiesces in the holding by the tenant under the lease, there is no rule of law which will preclude its continuance. And it may, without affecting its validity, be regarded as a new contract between the remainderman and the tenant. [Hoagland v. Crum, 113 Ill. 365.] In the Hoagland case, it was held, that "where the tenant elects to continue holding the premises after the determination of the lease by the death of the lessor, and the owner of the reversion acquiesces in such holding, there is no rule of law that will prevent

11—280 Mo.

the owner from recovering of the tenant the reasonable value for the use and occupation of the premises.'' Such reasonable value can not be better estimated in the instant case than by fixing it at the amount of the royalty agreed upon in the original lease. [Barson v. Mulligan, 198 N. Y. 24, 90 N. E. 1127; Seigel v. Neary, 77 N. Y. Supp. 854; Voorhies v. Cummings, 58 N. Y. Supp. 1120.]

The lack of interest of the defendant Mary E. Smith · in the land either arising out of her former marital condition, under contract, or by devise, forecloses her claim to the rent or royalty in question. The nature of the title of Rowena Kline, which is absolute, coupled with her acquiescence and approval of the original lease, and her consent to its continuance entitles her to the royalty of ten per cent. of the ores mined on the land from the death of the life tenant, Fred D. Smith, to continue during the term of the lease.

The chats or tailings which have accumulated on the . land may be properly classified as a part of the ore taken therefrom, and the proceeds arising from their sale must be apportioned according to the rights of the respective parties hereto. To those which accumulated prior to the death of the life tenant, the plaintiff is entitled. Of those which accumulated subsequently, the defendant Rowena Kline is entitled to ten per cent. of the gross amount arising from the sale of same.

IV.   In plaintiff's reply she assumes a contradictory position to that announced in her petition. In the latter, she avers, among other essentials, the existence · **Improper Reply.** of the debt, her willingness to pay the same; that she is a mere stakeholder and has no interest in the subject-matter, and is free from liability to either of the defendants. In her reply, she assumes an offensively hostile attitude to the defendant Rowena Kline, and alleges that the latter is estopped from claiming rent or royalty from the plaintiff. This pleading has no place in a proceeding of this character. If regarded as other than surplusage, it would have au-

thorized a dismissal of the action on the ground that it discloses such a hostility on the part of the plaintiff to one of the defendants as to preclude him from invoking interpleader. This case, however, has tarried in the courts for more than four years, to the unquestioned detriment of all parties concerned. By its chronic presence it clamors for final determination. That there may be an end of litigation, therefore, we treat the reply, other than the general denial, as surplusage, thus enabling the case to be determined upon its merits.

The judgment of the Court of Appeals rendered in this case was in the main correct. The difference of opinion of the judges, however, in regard to some of the matters at issue, has rendered it necessary that the entire case be reviewed here. This we have done, with the result, for the reasons stated, that the judgment of the trial court is reversed and remanded, to be proceeded with in a manner not inconsistent with the conclusions herein reached. It is so ordered.

*Faris, J.,* concurs; *Williams, P. J.,* not sitting.